the case. So now I will call the last case of the day, Lindsey Rafferty v. Denny's. Stephanie. Lindsey Rafferty v. Denny's. Good morning. May it please the court. My name is Gerald Wells and I represent the plaintiff appellant, Lindsey Rafferty. As an initial matter, with respect to this court's recent inquiry regarding Mikkels, I think all parties are in agreement that there was a final judgment with respect to the opt-in individuals. And that is how the final judgment. Excuse me. What is that? That they were dismissed. Where are they dismissed? Because the court found there wasn't there was not similarly situated. Now I will concede there was no explicit order issued indicating that there were dismissed. However, all parties acted as though they were dismissed. And indeed, the lower court proceeded as though they were dismissed. Isn't that a problem though under Mikkels? Don't we need to have an actual dismissal since they're still on the docket? So Your Honor, with respect to Mikkels, in Mikkels, there wasn't a there was not a determination on the merits that they were that the individuals who opted in there were not similarly situated. So the court there said because the individuals had been there had been no determination that they were not similarly situated, they were still party plaintiffs. Here, by operation of 11th Circuit precedent, the individuals were determined not to be similarly situated. And therefore, we can we believe and the parties acted as though they were dismissed. Now, I will concede for sake of clarity, if this court believes that an order should be issued, then the appropriate thing would be to do would remand and have the district court issue an explicit order dismissing without prejudice. Let me ask you a question. If we were to do that, it seems to me that then the opt in the time for appeal for the opt ins would then start again. I understand also that they Miss Rafferty, is that right? That is correct, Your Honor. And I'm not going to ask you to make representations on their behalf here or anything of that nature, because obviously they're not before the court right now. But. You know, if we were to remand that, I guess then then the next question would be and I'm just sort of thinking out loud, not necessarily asking you to answer whether the opt in plaintiffs would appeal any other issues besides what's already been appealed, and if not, whether they would be willing to rest on the briefing that's already been filed. Again, you don't have to address it right now. I don't want to bind you to anything. I will note. I understand your courts, Your Honor's inquiry, and I will note that one of the individual opt ins has gone and filed her own separate lawsuit. So even the individual opt ins are proceeding as though they were, in fact, dismissed. However, I understand Your Honor's interest as well as the court's interest in having an affirmative I think the way the parties have acted their submissions to this court as well as the way the lower court proceeded, including in its ruling that it would defer judgment on defendants motion for judgment of of costs that all the parties acted as though the individual opt ins were dismissed. With respect to the underlying appeal, we believe that the district court committed a reversible error because it improperly encroached on the sole province of the jury in three important aspects. First, it improperly made credibility determinations regarding the veracity of Ms. DiMatteo's declaration. Second, it ignored evidence that plaintiff testified that she performed unrelated, non-tip-toot tasks. And third, it ignored testimony that the plaintiff spent a significant amount of her time performing related side work tasks. How is Ms. DiMatteo's testimony, and I apologize if I'm mispronouncing her name. How is her testimony inconsistent with the testimony of the corporate representative? And as I understand it, the corporate representative said, we didn't have any written materials on this stuff until 2019. And then Ms. DiMatteo said, I orally discussed, in addition to the other thing, the written materials, the employee handbook, the posters. I then went through these four or five things with her orally. Assuming oral representations are sufficient in order to notify of the five factors, and assuming the five factors are statutory and required, why is that inconsistent with such that a trial court is required to disregard that for purposes of summary judgment? Because, Your Honor, as soon as the 30B6 witness testified that we didn't have these materials, as well as testified we didn't provide these materials to our managers, a trier of fact would then need to make the three determinations of, one, did the manager, in fact, have the information? Two, did they know to convey it to the employee? And three, because the employer is the one taking the tip credit, did they actually then provide it to the employer? I thought in summary judgment we assume the truth of the testimony, except that which is controverted. And here we have an affidavit from the Ms. DiMatteo who says that she did this. The plaintiff says, I don't remember, and that's fair, it's happened in 2012, who could? And the corporate representative says, we didn't have any written materials that we gave that had that fifth opt-in prong. And again, assume for the moment that that actually is required by the statute to be part of the notification. Your Honor, at that moment then, I would submit that the credibility of Ms. DiMatteo's declaration, which we did not have the opportunity to depose her at all, because it was provided when they filed summary judgment, that the credibility of her declaration is then called into question. And at that point, it is for the trier of fact to determine was that declaration in fact credible. What's your best case on summary judgment that that's how we read, where there isn't a direct inconsistency between the two witnesses? And I guess I'm partly not sure that even if there was an inconsistency between them, as long as the plaintiff doesn't controvert the testimony. But again, here we don't have a direct inconsistency. You can give me your best case where under this sort of fact scenario, where it isn't directly inconsistent, but may possibly undermine or have been used in cross-examination, that we are to disregard that for summary judgment purposes. Your Honor, I would submit Strickland versus Norfolk Southern, where this court said when a fact finder required to weigh credibility, summary judgment is, quote, simply inappropriate, improper. In that case, what was the issue regarding credibility? With respect to whether or not the individual, in fact, was injured at work. In that case, if I recall correctly. Well, in that case, because there was one person who said it happened. Another person said it didn't happen, right? In that case, the employee said I was injured at work. Right. And the employer said there's no evidence that this occurred. In fact, you can't even identify the rail car that you were injured on. And the court said at that moment, we need to make a credibility determination as to the employee where they, in fact, injured. That's a trier fact. Okay. Thank you. Absolutely. And so in each of these, we think that the district court engaged in credibility determinations that are inappropriate. In fact, the district court's opinion can best be summed where it determined that plaintiff was unable to precisely identify the days in which he performed precise tasks. And frankly, we think that's a standard that's far too high, given Strickland, where you're not even required to identify the rail car that injured you. You certainly shouldn't be requiring an employee to identify the exact day that you performed excessive amount of untipped work or unrelated non-tipped work. That standard is far too high, given that it is the employer's duty to keep complete and accurate records, and it's the employer's duty to record both tipped work and untipped work pursuant to the regulation. I thought your best case for that was Anderson, where the Supreme Court essentially set sort of a presumption. As long as you meet sort of the threshold, then the other side has to come and give the records to dispute that, right? Your Honor, I was trying to, with respect to cases throughout the 11th Circuit, obviously the Supreme Court in Anderson versus Liberty absolutely said credibility determinations are the trier effect. Regarding the other instances, we also believe that the district court made and committed a reversible error regarding issues of law when it determined that our claim that an updated tip credit amount was not provided, was not contained within the complaint, and therefore defendants didn't have notice of it. And we believe that a fair reading of our complaint, where we said that she was not provided the tip credit amount, contains that issue. In addition, we think that the tip credit amount is integral to our claim, and under 11th Circuit precedent, where this court has held that we don't need to identify the exact claim as long as the theory is presented, we've more than put defendants on notice. And Rule 8 should be liberally construed so as to allow that claim to proceed. And in that instance, not even the DiMatteo Declaration indicates that updated amounts with respect to the tip credit that was claimed were provided. The corporate representative, and there was other evidence that the Workday, I think that's the name of the program, that the Workday program did constantly update when the amounts changed in terms of how much was being paid pursuant to the minimum wage, and they said that those were very current, as I understand the record. Your Honor, the 30B6 witness testified that the wage updates were provided in Workday. We were provided no information with respect to was Workday actually provided, and did the Workday actually indicate the tip credit amount? There's no controverted evidence regarding that. In other words, as I understand it, the plaintiff again, and who could blame her, says, I just simply don't remember what was updated in her deposition, right? Correct. And Your Honor, we would submit that it's improper for defendants to simply say, effectively, trust us, we did it. We're not going to give you any documents. We're not going to provide any evidence or any proof. I mean, they've sworn to it, and certainly in discovery, you're entitled to test any of that by subpoenaing any of those documents and records to see any indications from their computer logs of when they were logged in or when they were logged out. I mean, you're entitled to that information, right? We are, and none of the Workday information was provided in discovery with respect to any potential screenshots. And if I recall, Your Honor, the testimony under Workday was that the updated wage rate was provided, not necessarily the tip credit amount was provided. So with the issue of the updated tip credit amount, and I will note for the record that my client worked from 2012 until 2018, and every year in Ohio, there was a change in the minimum wage rate, which included both a rise in the cash wage paid as well as a corresponding rise in the tip credit amount paid, with the exception of 2016, where it was the same amount as 2015. And no documents were provided that indicated a new tip credit amount was provided. The only documentary evidence defendants provided to us was that a tip credit amount was provided to my client when she began her employment in 2012. Indeed, the lower court's record denotes that other information, the tip credit amount was contained in other documents, and that's simply not the case. And I see that my time has expired, so I will say that we render my argument for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court, Luis Santos for the appellee, Denny Sink. Your Honors, I would like to start by addressing right away the issue that worked a additional notice issue, which the lower court found was waived, correctly found that it was waived, because the reality is that the plaintiff in the complaint, first of all, did not allege a violation of 513.2883. There is no mention whatsoever in the complaint of this additional claim that Denny somehow violated the FLSA by not providing additional notices as the minimum wage increased. There's no claim like that in the complaint. Assume that we agree with your opposing counsel that all that needs to be alleged is a violation of the statutory framework, and they can allege different theories of how that statute was violated. So, what evidence is there or is there not for summary judgment purposes, and is that evidence disputed regarding whether there was notice of updated changes in wage as minimum wage changed in Ohio? Yes, Your Honor. As Judge Graham correctly noted in the record, there is evidence that was provided by Denny's that showed that through the workday portal, the plaintiff and the employees in general received notice of the different changes in the tip rate. There's also evidence that the wage pollsters were updated every single year, which Ms. Rafferty herself admitted that she saw and reviewed every year during her deposition. She saw the pollsters that are put up in the restaurant. She admitted to that, Your Honor. So, there's evidence of the pollsters which contain the information. This evidence, unrebutted evidence that was submitted by Denny's that through the workday portal notice is properly provided. Is the actual amount of the wage disclosed and updated regularly? Whenever there is a change, yes, Your Honor. That's done through the workday portal, which was the testimony from the corporate representative. And again, opposing counsel is arguing that there was no opportunity for discovery or that nothing was provided in discovery to satisfy this issue. Well, first of all, that's not true because there was testimony provided regarding the workday and some of these pollsters. And one of the reasons why there was not extensive discovery on this issue is because it was never raised. The reality is that the first thing that we found out that the were challenging this subsection of the FLSA was that summary judgment. Just like the judge Graham indicated, this is not an issue that was alleged in the complaint whatsoever. If they wanted to bring up this issue, they needed to amend their complaint. Summary judgment is not the time for you to amend and bring new issues as we all know. Counsel, if I might just take us down a different path for a moment. I would like to speak about the 2018 opinion letter and whether it is entitled to our deference. And I would ask if you wanted to address that. I'll tell you what my concerns are in particular. I guess there are a couple of them. But at the second step of the hour analysis, if the regulation is genuinely ambiguous, the agency's reading must be reasonable and it must come within the zone of ambiguity that the court has identified after it uses interpretive tools. And finally, the court must in third step, a court must make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight. Here's where I have some concerns. It does not seem like there was any real consideration here or any thought that went behind this. And I wonder if it's really entitled to deference at the third step, certainly, but possibly also at the second step. For example, there does not appear to be any kind of limitation on the amount of time an employee may spend in a non-TIP related so-called related duty. In the 2018 opinion letter, just as contemporaneous or a time limit on that. The second thing I would say that is of concern is the reference to the O-net for determining related duties. And the reason is because maybe I have a misunderstanding of what the O-net is and so you can feel free to clarify that for me if I'm confused. But my understanding of the O-net is that the restaurants basically put into a database what kinds of duties they want the TIP employees to perform as so-called related duties. And my concern is that then there's not really any kind of regulation there. It's really just the employers determining what are related duties and they could be whatever they want them to be and however much they want them to be. And so I'm not suggesting that some type of version of the 2018 letter, opinion letter regulation, whatever, could not necessarily be adopted with proper consideration and vetting. But I'm not seeing it here and then I've got these other two independent issues that if you don't address them I'd appreciate it. Yes, your honor. I'll do my best to answer all of those. I'll start with the last point that you made regarding O-net. Yes, O-net, the website itself is composed of information that is gathered from the industry. But I want to be clear for the court that that information doesn't only come from employers. It comes from surveys that are sent down that are composed of through employee inquiries, employer inquiries, trade groups, as you can imagine there's employee advocacy groups that participate in that process. So it's not a one-sided website that is only controlled by the information that employers provide. So that's, you know, on that issue. Also regarding O-net, government and courts already rely on that website to interpret other areas. For example, in the areas of social security benefits, you know, courts and the government looks at O-net to try to determine, you know, whether a person is particularly qualified for a position. Also, that seems a little different, right? Because that's not, that doesn't have the fox guarding the hen house type of element to it, right? I mean a person, there's no interest in the people putting the information into the database to state qualifications that don't really apply. There may be an interest in stating that duties are related, if they might not be. Right, your honor, and I'll go back. The issue that we have with the regulation is that, you know, the Department of Labor over the years has really not provided employers or employees a way to determine whether a duty is related or unrelated, which has led to a ton of litigation on that particular issues and a ton of challenges to the role on that particular issue. Because there is no guidance, you know, the really solution is to use an objective website like O-net, something that the government monitors and creates, to try to at least give some guidance to employers and to courts in determining whether something is related or unrelated to the tipped occupation. But even if we accept that, I mean O-net doesn't take care of all the problems, does it? Because we know that it doesn't address the time that people like Ms. Rafferty have to take to fill Grubhub orders and that type of thing. Absolutely, and that goes to a different part of the regulation. That goes to the 20 percent rule aspect of it, which if it's related to the duty, then that goes to that 20 percent threshold. Yes, O-net is not a website that really does the dual occupation, but it is a source that courts can rely on in determining, in employers really, in determining whether the duty is related or not. Again, the Department of Labor has not provided really any other guidance other than saying that there's certain things that a server, for example, can do, like making coffee, rolling silverware, folding napkins that are definitely related. Other than that, there's really no other guidance. And I understand your position on that, but getting back to what Judge Martin was asking about, the 20 percent timing thing is not in the 2018 opinion letter, right? Correct, and it was not in the 2009 opinion letter. The reality is that the Department of Labor, to be fair to the court, has flip-flopped on this issue way too many times. I mean, I'm not sure that's really accurate. I mean, except for one day in January of, I guess it was January 21st of 2009, it's been pretty consistent that it's been 20 percent for like at least the last 30 years. Until 2018, when we got this opinion letter, but then the problem there is it doesn't seem to be, there doesn't seem to be consideration behind it. And again, that is, you know, it may turn out that somewhere down the road, this is a great regulation that is fine, but I don't, I'm not seeing that consideration behind it that would generally be the sort of thing that would entitle it to our deference. And I wonder if you could address that. Also, the fact that there does not seem to be any kind of limitation on the timing about how much time the employee can spend in these related or unrelated duties. Well, Your Honor, I think there is consideration. I respectfully disagree, because the consideration that the Department of Labor gave in 2018, for example, is the Pellon opinion, which was affirmed by this court in 2008, where Judge Moreno from the Southern District specifically rejected the 20 percent rule as unworkable, as unfeasible, because it would require perpetual monitoring of servers, for example, or tipped employees, you know, by management, where they would have to go minute by minute trying to figure out, A, is the duty related or unrelated, with no guidance whatsoever on what related and unrelated is, and then determine, But again, I'm now asking you, I've sort of moved on, and I understand your argument on related and unrelated, but I'm asking about the percentage of time. Right. Yes, Your Honor. So, to address the issue on the percentage of time, the 2018 opinion letter does eliminate a 20 percent cap, and the reality is that there is no cap under the FLSA. But it eliminates any time limit, and do you agree with me that the regulation seems to require time limits, the 531.56? Yes. You know, Your Honor, what I would say about the dual jobs regulation is that the regulation taken at the hall talks about dual jobs, two people in two different positions, and it does give an example towards the end of what's a situation different from what a user, which is a maintenance man in a server, and in that context in the bottom, it does include the terms occasional or part of the time, which at least seems to suggest that, you know, there has to be some sort of timing element to it. I don't disagree that the 2018 opinion letter does not include a time cap. It eliminates a time cap, and the reason for that, again, is relying on the Pellon opinion, which is from this court, Your Honor, it incites specifically to Pellon and to Judge Moreno's concerns that a 20 percent cap is simply not feasible. It's unworkable. Is the word occasionally ambiguous? I believe so, Your Honor. Why? What does it mean? Occasionally means sometimes. Sometimes. In fact, I looked up at the Oxford English dictionary, and that's exactly the word it defines it as, sometimes. So how can it be ambiguous if we know, you and I sitting here talking, understand what it means? I imagine most of the people can open up the regulation and see it says occasionally and understand, oh, that means not always, not never, but sometimes, right? Your Honor, I agree with you 100 percent. I'm usually... So why, that's great. Why would we even get to step two or step three? Why would we defer to the 2018 letter at all, for anything, when we have an unambiguous regulation which says that an employee, a server, should only be doing the side work, the related side work, occasionally? Well, Your Honor, if we don't defer to the 2018 letter for that reason, then we can't defer to the 20 percent rule, because the 20 percent rule is promised, premised on the fact that occasionally is ambiguous. Why do we need to defer to any of it? I agree. Perhaps the court doesn't defer to any of it. So let's apply it to the facts of this case. Because as I understand it, the plaintiff testified here that while it's an estimate, she didn't have the records, that she ended up doing side work a lot of the time, it seemed like. She said upwards, almost, she rejected the 40 percent, but she said it was between 20 to 40 percent of the time. And sometimes, I think it was two, in a six-hour shift, was doing two hours at the end of the day, right? Yes, Your Honor. The problem is her latter admission. When I pressed her on cross-examination on those questions, she admitted repeatedly that she was only guessing, that she can only guess. Right. She said it was an estimate, right? Well, she said specifically, I am guessing, Your Honor. She gave her best estimate of what it was. I don't understand how under Anderson, that is not sufficient in order to trigger an issue of material fact that she, more than occasionally, was required to do work. Well, again, Your Honor, if you look at the opinion that we cited, for example, the case of how it would be Johnny's Italian Steakhouse, the facts are almost identical here. The judge found that... The Eighth Circuit and FAST had a very similar situation, where there was simply an estimate. And what the court there said is, all you need is an estimate. The other side can then come and put the records in to dispute that estimate. But beyond that, all the plaintiff needs to suggest is some sort of estimate of how much time that she has. We're not going to have her... People don't keep that kind of contemporaneous notes of when you're folding napkins and when you're doing a grubhub order. Right, Your Honor, but Anderson is clear. It's not simply an estimate. It has to be sufficient to make it, to raise the matter to a just and reasonable inference. Right. In the Howick case, the court said when a plaintiff simply is guessing, and here she says specifically her testimony was, I cannot identify a single week where I believe I spend more than 20% of my time. With that, again, they have to raise at least an inference that we get to rebut then as the employer. But an employee cannot simply go in and say... Well, but I mean, they can say things like what she did, which is around holidays, I was working extra time or whatever. I mean, that's in the case law, that that is permissible. She doesn't have to say on such and such day, I worked this number of hours doing waiting duties, and I worked this number of hours doing other duties. I mean, she needs to provide evidence that she worked in excess of what was permitted, and she needs to provide evidence as to generally when it happened. I don't think she needs to be more specific than that. I agree, Your Honor. However, when the plaintiff admitted that she was simply guessing, when I asked her, how did you come up with those numbers, and she repeatedly testified, the record is clear. I am only guessing. I didn't keep track. I don't have any way to determine how much time I spent doing the side work. I'm only guessing. And I think it really hurts her testimonies when she said, when I asked her about the affidavit that she had given previously during the certification stage, and she said, I spent 40% of the time. And I asked her, how did you come up with that? And she said, that is inaccurate. I did not spend 40% of my time. I really don't know how much time I spent. That changes the inferred, other than that she's simply making it up as she goes, which is exactly what this record reflects. Your Honor, I see my time is up, unless the panel has any other questions. Thank you. I thank the court. Thank you.  With respect to my client's testimony regarding she was guessing, that was when defense counsel probed her on a specific day, say, can you identify what you did on exactly this day? She said, no, I cannot. It would be a guess. However, with respect to her overall job duties and job responsibilities, she testified clearly and unmistakably that she spent a significant portion of her time doing either un-tipped, non-related work, back of the house cleaning, deep cleaning of gaskets on refrigerators, or un-tipped work preparing grub hub orders and the like, or an excessive amount of tipped related work. And she was able to identify those instances. And indeed, she said unmistakably that she timed how long it took her. So she was able to say, these tasks, when defense counsel asked her, took me 30 minutes. So over the course of a day, if I was assigned, per the server side book, these tasks, my estimate would be between 45 and 85 minutes if there was three servers. Counsel, taking that testimony is true, and I tend to read the deposition the same way you're describing it. That's more than occasional, correct? Correct. Do we need to get to past the first prong of Kaiser? Do we need to get to second and third and apply the 20% rule in this if we find simply that this was more than occasional, more than the regulation required? Your Honor, no, with respect to my client's testimony here. Yes. However, in a broad macro sense, what constitutes occasional in the employee, in the employer, employee context of what is an occasional work in a restaurant, that I would submit is ambiguous. I get you it's going to be hard. Law is hard, and it's fact intensive. And each plaintiff is going to have to work and see and do what your client did in this case and say, I did this much here, and I did this much here, and they were having me do all this work. And they're going to have to analyze that next to what we understand occasional to be, was this something you sometimes did, or was it more of a regular part of your job? That wasn't something you did part of the time. So in my mind, the hardness of the application seems to be different than whether the term is ambiguous or not. Do you agree with that? I would, Your Honor. And I would submit here that with those issues where my client has effectively said, I did this much work, and I can tell you on days where I worked three hours, I spent two hours doing side work, that that is sufficient for a trier of fact to say, do we believe her? Is it credible? And therefore, defendants now have the burden to disprove her estimates. That is what the Supreme Court said at Mount Clemens, and that has been good law for the last 70 plus years. Now defendants are coming in before this panel and asking you to turn the FLSA on its head, to effectively say that they should get the benefit because they didn't keep complete and accurate records of what my client did. And I see that my time has expired, so unless the panel has any other questions, I would submit that my client's case is submitted. Thank you. It is. We appreciate the presentation, and we've got the case. So we will be in recess until 9 o'clock tomorrow morning.